**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**TASHAUN STOCKDALE**, an individual,

Plaintiff,

v.

**TRAVEL + LEISURE CO.**, a Delaware corporation,

Defendant.

**CIVIL ACTION**

**Case No. 8:25-cv-3348**

**Judge:**

**Mag. Judge:**

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, TASHAUN STOCKDALE ("STOCKDALE" or "Plaintiff"), by and through undersigned counsel, and states the following for his Complaint:

## CAUSES OF ACTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act of 1992 ("FCRA") for (1) race-based hostile work environment in violation of Title VII, (2) race-based hostile work environment in violation of the FCRA, (3) sex-based hostile work environment (sexual orientation and sex stereotyping) in violation of Title VII, (4) sex-based hostile work environment in violation of the FCRA, (5) retaliation in violation of Title VII, and (6) retaliation in violation of the FCRA.

## PARTIES

2. The Plaintiff, TASHAUN STOCKDALE, is an individual and a resident of Florida who at all material times was domiciled in Pinellas County, Florida, and who performed services for the Defendant in Clearwater, Pinellas County, Florida.

3. Defendant, TRAVEL + LEISURE CO. ("Defendant"), is a Delaware corporation with its principal executive offices at 501 W. Church St., Orlando, Florida 32805. It employs more than 15 employees, and it employed STOCKDALE in Pinellas County, Florida.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this matter under 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over STOCKDALE's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the United States District Court for the Middle District of Florida because STOCKDALE resides in, the Defendant conducts business in, and some or all of the events giving rise to STOCKDALE's claims occurred in Pinellas County, Florida, which is within the Middle District of Florida. Venue is proper in the Tampa Division under Local Rule 1.04 because the action accrued in Pinellas County, which is within the Tampa Division.

7. On August 5, 2026, STOCKDALE timely filed a Charge of Discrimination, No. 510-2026-11407, with the EEOC, dual-filed with the Florida Commission on Human Relations.

8. The EEOC issued its Determination and Notice of Rights on August 27, 2026, and STOCKDALE files this Complaint within 90 days of receiving it. (A true and accurate copy of the Notice of Right to Sue is attached as Exhibit 1.)

9. All conditions precedent to this action have occurred, been performed, or been waived.

## GENERAL ALLEGATIONS

10. On or about May 5, 2025, STOCKDALE began working for the Defendant as a Senior Sales Representative.

11. STOCKDALE always performed his assigned duties in a professional manner and was well qualified for his position. He earned commission and monthly volume-based bonuses and received no negative feedback during his employment.

12. STOCKDALE is African American.

13. Beginning in or about January 2026, STOCKDALE's coworkers and a selling manager repeatedly told him he was gay and pressured him to "come out of the closet." The comments included, among others:

a. A coworker, Mike, asking whether STOCKDALE had told his customers that he was gay and that his boyfriend had bought him the roses on his desk;

b. A coworker saying that only gay men wear hoop earrings;

c. A selling manager, Donna, saying, "we know you like men just come out of the closet it's okay"; and

d. Mike telling STOCKDALE to talk to his parents about being gay, "come out of the closet," and "live [his] truth."

14. On or about January 14, 2026, STOCKDALE told Vice President Steve Pinta that coworkers were calling him gay, and that he found it inappropriate and offensive. STOCKDALE told Pinta several times that being called gay made him uncomfortable. Pinta responded, in words or substance, that if STOCKDALE was not gay it should not matter, and that Pinta could not stop the comments.

15. On or about April 11, 2026, STOCKDALE showed Donna a photograph of himself holding flowers. She told him he "look[ed] gay" and that a picture like that made her wonder "where the other man is."

16. On May 22, 2026, STOCKDALE texted Mike to follow up on a fishing trip the two had discussed at a company event. In response, Mike suggested that STOCKDALE was "either confused or in denial," and wrote:

"Its [sic] really ok. We have a very supportive group. We won't think any less of you. Just be true to yourself. No judgement."

17. On June 1, 2026, STOCKDALE texted a coworker: "Bro mfs in there call me gay almost everyday I just need you to hear it." The coworker replied, "O like Mike lol I've heard."

18. On May 17, 2026, at about 11:30 a.m., STOCKDALE was at the managers' station and asked a coworker to hand him his fruit from the refrigerator. His manager, Todd, responded, "I bet it's watermelon." Todd also said, "why would you put that black people watermelon in the fridge" (or words to that effect). Todd's comment invoked a long-standing racial stereotype about African Americans.

19. STOCKDALE asked Todd why it had to be watermelon. A coworker, Abdelmonaam Labidi, witnessed the exchange and said he felt the comment was racist.

20. That evening, Sunday, May 17, 2026, at 8:32 p.m., Todd texted STOCKDALE:

> "Are you fucking me today? Watermelon? Did you put that black five [sic] matter pin in front of me 2 days ago? I don't [sic] a fuck what color anyone is! I have enough on my plate as it is. That's not funny or appreciated!"

21. Upon information and belief, "black five matter" refers to a "Black Lives Matter" pin. STOCKDALE replied, "Huh?" at 8:33 p.m.

22. The next day, Mr. Labidi reported the incident to management. STOCKDALE was then called into a meeting with Sales Director Matt and Vice President Pinta, where he described Todd's comment and text message. He also reported, for the second time, the comments about his sexual orientation.

23. On June 4, 2026, STOCKDALE called Pinta and told him that coworkers were still calling him gay and that nothing had changed since January. That night Pinta texted: "Without giving me the information and who it is I don't know how I can help further."

24. On June 5, 2026, Pinta and Matt called STOCKDALE into the office and asked to see the texts from Todd and Mike. STOCKDALE showed them the texts but held back names because he feared retaliation. Pinta and Matt assured him he would not be retaliated against or terminated.

25. STOCKDALE asked management to give the group a general reminder about workplace policy and conduct. Matt told STOCKDALE it sounded like he was trying to set the company up for a lawsuit.

26. At a June 8, 2026 morning meeting, Pinta wished the group "Happy Pride Month" and said it was "a shame in 2026 we can't call people gay without them getting offended."

27. STOCKDALE texted Pinta that the meeting had addressed other issues "but not about people saying inappropriate things like calling someone

gay," and offered to provide "names dates times text messages." He then wrote: "I'm asking why a general reminder about professionalism, rumors, and inappropriate comments wasn't given when I've been reporting these concerns for months."

28. On June 14, 2026, Mike again told STOCKDALE that he needed to talk to his parents about being gay and should "come out of the closet" because it was Pride Month.

29. On June 15, 2026, STOCKDALE met with Pinta and Human Resources representative Jodi via Zoom. During that meeting, HR asked STOCKDALE for the text messages showing coworkers calling him gay and the messages from Todd. He agreed to provide them and explained that he had not come to HR earlier because he feared retaliation and losing his job.

30. STOCKDALE sent the text messages to HR on June 15, 2026, thereby making a formal complaint of race- and sex-based harassment to Human Resources.

31. Two days later, on June 17, 2026, at about 6:15 p.m., Pinta called STOCKDALE and told him that HR had decided to terminate him. When STOCKDALE asked why, Pinta said HR would reach out the next day with an explanation. STOCKDALE never received one.

32. That same evening, Pinta texted STOCKDALE: "Do not return back to the resort to collect any personal belongings."

33. STOCKDALE repeatedly asked the Defendant in writing why he was fired. He wrote: "Again why was I terminated? If I could have a reason in black and white that would be greatly appreciated." The Defendant has never given him a reason.

34. At all material times, the Defendant knew STOCKDALE's race, knew he was perceived as gay, and knew of his complaints of race- and sex-based harassment.

35. The Defendant never took prompt and appropriate remedial action to stop the harassment. Instead, it fired STOCKDALE two days after his formal complaint to Human Resources.

36. The conduct described above left STOCKDALE feeling humiliated, uncomfortable, and targeted.

37. The Defendant has violated Title VII and the FCRA.

**COUNT I – RACE-BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII**

38. Plaintiff incorporates by reference Paragraphs 1–37 as though fully set forth herein.

39. STOCKDALE is African American and, as such, is a member of a protected class.

40. At all material times, STOCKDALE was an employee and the Defendant was his employer, as defined by Title VII, 42 U.S.C. § 2000e.

41. STOCKDALE was subjected to unwelcome harassment based on his race. This included his manager's racially stereotyped comment and his manager's hostile, profane text message about STOCKDALE's race-related reaction and about a racial-justice pin.

42. The harassment was severe or pervasive enough to alter the terms and conditions of STOCKDALE's employment and to create a hostile work environment.

43. The harasser was STOCKDALE's manager. The Defendant knew or should have known of the harassment and failed to take prompt remedial action.

44. The acts, failures to act, practices, and policies set forth above constitute intentional discrimination based on race, in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2.

45. As a direct and proximate result, STOCKDALE has suffered damages. These include loss of employment opportunities, loss of past and future income, commissions, bonuses, and fringe benefits, humiliation, and mental and emotional distress. He is entitled to all relief necessary to make him whole.

46. STOCKDALE has exhausted his administrative remedies, and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites, and other compensation for employment that Plaintiff would have received had he kept his position with the Defendant, plus interest, including but not limited to lost salary, commissions, and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

iv. Compensatory damages;

v. Punitive damages;

vi. Reasonable attorney's fees plus costs; and

vii. Such other relief as this Court deems appropriate.

**COUNT II – RACE-BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE FCRA**

47. Plaintiff incorporates by reference Paragraphs 1–37 as though fully set forth herein.

48. STOCKDALE is African American and, as such, is a member of a protected class.

49. At all material times, STOCKDALE was an employee and the Defendant was his employer within the meaning of the FCRA, Fla. Stat. § 760.01 et seq.

50. STOCKDALE was subjected to unwelcome, severe or pervasive race-based harassment by his manager, which altered the terms and conditions of his employment. The Defendant knew or should have known of the harassment and failed to take prompt remedial action.

51. These acts constitute intentional race discrimination in violation of the FCRA.

52. As a direct and proximate result, STOCKDALE has suffered the damages described above and is entitled to all relief available under the FCRA.

53. STOCKDALE has satisfied all administrative prerequisites, and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages, and;

vii. Such other relief as this Court shall deem appropriate.

**COUNT III – SEX-BASED HOSTILE WORK ENVIRONMENT (SEXUAL ORIENTATION AND SEX STEREOTYPING) IN VIOLATION OF TITLE VII**

54. Plaintiff incorporates by reference Paragraphs 1–37 as though fully set forth herein.

55. Title VII prohibits discrimination because of sex. That includes discrimination based on actual or perceived sexual orientation and on failure to conform to sex stereotypes.

56. STOCKDALE was harassed because his coworkers and a selling manager perceived him as gay, and because his appearance and conduct (such as hoop earrings, flowers, and roses) did not conform to their stereotypes of masculinity.

57. The harassment was unwelcome, continued from January through June 2026, and was severe or pervasive enough to alter the terms and conditions of STOCKDALE's employment.

58. STOCKDALE reported the harassment to the Defendant's Vice President, Sales Director, and Human Resources. The Defendant failed to take prompt remedial action, and its Vice President publicly disparaged objections to being called gay.

59. These acts constitute intentional discrimination because of sex, in violation of 42 U.S.C. § 2000e-2.

60. As a direct and proximate result, STOCKDALE has suffered the damages described above and is entitled to all relief necessary to make him whole.

61. STOCKDALE has exhausted his administrative remedies, and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages, and;

vii. Such other relief as this Court shall deem appropriate.

**COUNT IV – SEX-BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE FCRA**

62. Plaintiff incorporates by reference Paragraphs 1–37 as though fully set forth herein.

63. At all material times, STOCKDALE was an employee and the Defendant was his employer within the meaning of the FCRA.

64. STOCKDALE was subjected to unwelcome, severe or pervasive harassment because of sex, based on his perceived sexual orientation and his failure to conform to sex stereotypes. The Defendant knew of the harassment and failed to take prompt remedial action.

65. These acts constitute intentional sex discrimination in violation of the FCRA.

66. As a direct and proximate result, STOCKDALE has suffered the damages described above and is entitled to all relief available under the FCRA.

67. STOCKDALE has satisfied all administrative prerequisites, and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages, and;

vii. Such other relief as this Court shall deem appropriate.

**<u>COUNT V – RETALIATION IN VIOLATION OF TITLE VII</u>**

68. Plaintiff incorporates by reference Paragraphs 1–37 as though fully set forth herein.

69. STOCKDALE engaged in statutorily protected activity. He opposed race- and sex-based harassment in complaints to the Vice President on January 14 and June 4, 2026; to the Sales Director and Vice President on or about May 18 and June 5, 2026; in writing to the Vice President in June

2026; and in a formal complaint to Human Resources on June 15, 2026, when he provided supporting text messages.

70. The Defendant knew of STOCKDALE's protected activity. Its Sales Director told him that his complaints sounded like an attempt to set the company up for a lawsuit.

71. The Defendant subjected STOCKDALE to a materially adverse action: it fired him on June 17, 2026, two days after his formal HR complaint, and gave no reason.

72. STOCKDALE's protected activity was the but-for cause of his termination. The timing alone strongly supports causation, as do the Defendant's failure to give any reason and its managers' expressed hostility toward his complaints.

73. These acts constitute retaliation in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

74. As a direct and proximate result, STOCKDALE has suffered the damages described above and is entitled to all relief necessary to make him whole.

75. STOCKDALE has exhausted his administrative remedies, and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages, and;

vii. Such other relief as this Court shall deem appropriate.

**<u>COUNT VI – RETALIATION IN VIOLATION OF THE FCRA</u>**

76. Plaintiff incorporates by reference Paragraphs 1–37 as though fully set forth herein.

77. At all material times, STOCKDALE was an employee and the Defendant was his employer within the meaning of the FCRA.

78. STOCKDALE engaged in protected activity under the FCRA, Fla. Stat. § 760.10(7), by opposing race- and sex-based harassment in the complaints described above.

79. The Defendant knew of that activity and fired STOCKDALE two days after his formal complaint to Human Resources. His protected activity caused the termination.

80. These acts constitute retaliation in violation of the FCRA.

81. As a direct and proximate result, STOCKDALE has suffered the damages described above and is entitled to all relief available under the FCRA.

82. STOCKDALE has satisfied all administrative prerequisites, and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages, and;

vii. Such other relief as this Court shall deem appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States Constitution, Plaintiff demands a trial by jury on all issues triable as of right.

Respectfully submitted,

Dated: November 4, 2026

**s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT &DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com